STATE of North Dakota, Plaintiff and Appellant,

v.

Randall PERRY, Defendant and Respondent.

STATE of North Dakota, Plaintiff and Appellant,

v.

Scott PERRY, Defendant and Respondent.

Crim. Nos. 409, 410.

Supreme Court of North Dakota.

Jan. 19, 1971.

Helgi Johanneson, Atty. Gen., Dale H. Jensen, State's Atty., Richard B. Bear,

Asst. State's Atty., Bismarck, for plaintiff and appellant.

Vogel, Bair & Brown, Mandan, for defendants and respondents.

ERICKSTAD, Judge.

A grand jury summoned to convene in Burleigh County by the Honorable W. C. Lynch, one of the district judges in and for the fourth judicial district, began its deliberations on September 14, 1970. On the 25th of September, 1970, it brought in an indictment charging Randall Perry with having sold marijuana and hallucinogenic drugs. On that date it also brought in a similar indictment against Scott Perry. The grand jury was discharged on the 25th of September, 1970.

Counsel filed on behalf of each of the defendants the following pre-arraignment motions:

I

"The defendant respectfully moves the Court to require the State to produce for the inspection and copying by the defendant the minutes, proceedings and transcripts of the Grand Jury proceedings resulting in the indictment of the defendant.

II

"The defendant respectfully moves the Court to quash the indictment herein on the ground that the defendant was not permitted to appear before the Grand Jury and testify on his own behalf.

III

"The defendant respectfully moves the Court to require the prosecution to turn over to him all evidence in the possession of, or known to, the prosecution which is favorable or exculpatory to the defendant.

IV

"The defendant respectfully moves the Court for an Order requiring the State to grant him a preliminary hearing on the charges contained in the indictment."

The Honorable M. C. Fredricks, another one of the district judges for the fourth judicial district, after hearing the motions and receiving briefs from the parties, denied motions I, III, and IV and granted motion II.

The State has appealed from that part of the order which granted motion II and quashed the indictment against each of the defendants.

The first and basic issue we must consider on this appeal is whether the defendants are accused persons within the meaning of Section 29–10–25, N.D.C.C. That section reads:

"*Evidence of the accused.*—The grand jurors, upon the request of the accused, shall, and, of their own motion, may, hear the evidence for the accused. It is their duty to weigh all the evidence submitted to them and when they have reason to believe that there is other evidence, they may order such evidence to be produced, and for that purpose the state's attorney shall issue process for the witnesses."

The defendants were not asked by the grand jury to appear before it or to submit evidence on their behalf to it, nor were they notified that they were subjects of investigation by the grand jury so that they might request of the grand jury an opportunity to appear before it and submit evidence on their own behalf.

All agree that the defendants are now accused persons after having been indicted, but were they accused persons within the meaning of Section 29–10–25 before the indictments, when they had not been arrested or charged or held to answer for the crimes for which they are now indicted?

It is the position of the State that an accused within the meaning of Section 29–10–25, N.D.C.C., is a person who has been arrested or charged with a crime, but who has not yet had a preliminary hearing, or against whom a criminal information has not yet been filed.

It is the position of the defendants that a person becomes an accused, within the meaning of Section 29–10–25, when he becomes the target of an investigation. They argue that inasmuch as indictments were made by the grand jury before it was discharged they became the target of investigation sometime prior to that action, and that accordingly at that time they became entitled to present evidence on their behalf before the grand jury, and that not having been given that opportunity they were entitled after appropriate motion to have the indictments quashed.

The State argues that the trial court was in error in quashing the indictment because the motion of the defendants was not brought within one of the statutory grounds for the quashing of an indictment.

The defendants point out that Section 29–14–04, relied upon by the State, provides that, "A motion to quash the indictment * * * shall be available on the ground that * * * It is not found, endorsed, presented, nor filed as prescribed by this title; * * *"

It is their position that an indictment is not found as prescribed by Title 29 if it is found in violation of the language of Section 29–10–25, which is a part of Title 29. They assert that the language of Section 29–10–25 requires the grand jury to permit the accused to appear before it.

Section 29–10–25 has its origin in Title V, Section 190, of the Revised Codes of the Territory of Dakota, 1877, which reads:

"Evidence for Defendant.] The grand jury is not bound to hear evidence for the defendant, but it is their duty to weigh all the evidence submitted to them and when they have reason to believe that there is other evidence, they may by and with the consent of the district attorney order such evidence to be produced, and for that purpose the district attorney may issue process for the witnesses."

Title V is described in said Codes as "of proceedings after commitment and before indictment".

Section 161 of Title V reads:

"Public Offenses—How Prosecuted.] All public offenses triable in the district courts must be prosecuted by indictment, except as provided in the next section." Revised Codes Territory of Dakota (1877).

Section 162 refers to proceedings for the removal of certain officers and is unrelated to the issues in this lawsuit. It is obvious then that at the time Section 190 came into being prosecutions of criminal charges triable in district court proceeded by indictment rather than information.

Under the initial law of the Territory in 1877, the grand jury was not bound to hear evidence for the defendant, even though the defendant was a person who had been committed to custody prior to the indictment.

The language which is in issue today came into our law first as Section 8015 of the Revised Codes of North Dakota of 1895 without any apparent legislative authority. Notwithstanding that fact, the language now in issue was adopted by our Legislature when it adopted the Century Code in 1961. Its meaning, however, has not heretofore been construed.

Lacking precedent in case law on this issue in this State and having no knowledge of the existence of statutes with similar language in other states, we think it important to consider the practice prevailing under the federal system, which has had the grand jury as a part of that system since the adoption of the Bill of Rights.

The pertinent part of the Fifth Amendment to the United States Constitution, for the purposes of this appeal, reads, "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; * * *"

It is conceded that one indicted under the federal system is not entitled as a matter of right to appear and submit evidence to a grand jury on his own behalf. It is, in fact, stated in the defendants' brief that a grand jury indictment under the federal system can deprive of a preliminary hearing a person who has been arrested and who has demanded one. It is stated that this is possible because a federal indictment imports probable cause and, therefore, supposedly makes a preliminary hearing unnecessary.

It is the contention of the defendants that the deprivation of a preliminary hearing results in manifest injustice under the federal system, and that the plain language of Section 29–10–25, N.D.C.C., prevents such an injustice under our state law.

Notwithstanding the importance of a preliminary hearing which includes the defendant's right to submit testimony before a magistrate, who has the duty to determine whether a crime has been committed and if so, whether it is probable that the crime was committed by the defendant, we believe that it should be pointed out that there is a safeguard built into the procedure which provides for the bringing of criminal charges through the grand jury rather than through the filing of an information by the prosecuting attorney subsequent to a preliminary hearing. In the first method of prosecution the decision to indict must be concurred in by at least twelve of the grand jurors and only after they are convinced that the evidence before them would warrant a conviction of the accused by the trial jury; whereas under the latter method of prosecution an accused is bound over to the higher court and an information is presented by the prosecution upon the decision of a single magistrate when he is convinced that a public offense has been committed and that there is sufficient cause to believe that the defendant is guilty of it.

The sections of our Code pertinent to compare in this regard are Sections 29–10–39 and 29–10–40, relative to grand jury indictment, and Section 29–07–18 and Subsection 4 of Section 29–01–13, relating to the latter procedure.

*"29–10–39. When indictment ought to be found.*—The grand jurors shall find an indictment charging the defendant with the commission of an offense when all the evidence before them, taken together, is such as in their judgment would warrant a conviction by the trial jury."

*"29–10–40. Finding indictment—Number of jurors required.*—An indictment cannot be found without the concurrence of at least twelve grand jurors. When so found, it must be endorsed 'a true bill' and the endorsement must be signed by the foreman of the grand jury."

*"29–07–18. Procedure—Accused discharged.*—After hearing the evidence on behalf of the respective parties, in a preliminary examination, if it appears either that a public offense has not been committed, or that there is not sufficient cause to believe the defendant guilty thereof, the magistrate shall order the defendant to be discharged. * * *"

"29–01–13. * * *

" * * *

"4. An 'information' is an accusation in writing, in form and substance like an indictment for the same offense, charging a person with a crime or public offense, signed and verified by some person and presented to the district court

and filed in the office of the clerk of said court; * * *"

In support of their contention that one becomes an accused when one becomes the target of an investigation and that the defendants became a target of an investigation sometime prior to their indictments and thus became at that time entitled to submit evidence on their behalf, the defendants refer us to the cases of United States v. Wainwright, 284 F.Supp. 129 (1968); Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1967); and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We believe that all of those cases are distinguishable from the instant case on their facts.

In *Wainwright* the defendant was charged in an indictment with violating a certain section of the Internal Revenue Code of 1954. He moved for the return and suppression of all books, documents, papers, records, memoranda and statements delivered, explained, or given by him or through his agents, together with all potential evidence, the leads to which were acquired by the government up to and including the date at which he was asked to appear at a question and answer session, at which time he was advised of his right to refuse to answer any question or make any statement which might tend to incriminate him.

The facts and the issue in *Wainwright* are much different from the facts and the issue in the instant case, as is obvious from the following excerpt from *Wainwright*:

"Defendant is in the service station business. In September 1963, Glen Smith, a revenue agent of the United States Internal Revenue Service, called at defendant's residence and stated that he was to audit defendant's income tax returns for some particular years to determine whether deficiencies should be assessed against the taxpayer. He was allowed to take some of defendant's books and records at that time. During the next few months he examined these records, at times working with the bookkeeper employed by the defendant.

"It is the practice of the Internal Revenue Service, when the revenue agent in the civil division has reason to believe that the taxpayer under investigation has committed a criminal violation, to refer the case to the Intelligence Division where jurisdiction is limited to criminal matters. After consulting with his superiors in the civil department, Agent Smith, in November 1964, did refer the case of defendant to the criminal division. Special Agent Duane Gibbs was assigned to the case to investigate for possible criminal prosecution, but Gibbs did not meet defendant until June 29, 1965 when he went to his home to secure more records and books of the defendant. Smith continued to work with Gibbs in the investigation.

"On April 7, 1966 defendant was asked to appear at a Question and Answer session; present at the session were the defendant and his attorney, Mr. Robert Caddes, Revenue Agent Smith and Special Agent Robert Brumbaugh. It was not until this point in the investigation that Mr. Wainwright was clearly advised of his constitutional rights. The testimony was recorded and the deposition shows that before questioning the Special Agent advised defendant of his right to refuse to answer any question or make any statement which might tend to incriminate him, and informed him that anything he said or any evidence which he produced could be used against him in any proceeding, criminal or otherwise.

"At the hearing on the motion to suppress we disposed of the issue insofar as it relates to the evidence received at the Question and Answer session. There, the defendant, with his attorney present, was advised of his constitutional rights, and we held that the evidence secured at that time will be admissible at the trial of the cause. The issue reserved at the

hearing, to which we must now turn, is whether the evidence obtained by the Government, after defendant's case was referred to the Intelligence Division of the Internal Revenue Service and before the Question and Answer session, must be suppressed because of the failure of the Special Agent to advise defendant of his constitutional rights." United States v. Wainwright, 284 F.Supp. 129, 130, 131 (1968).

The district court concluded in *Wainwright* that the defendant became an accused at the time his case was referred by the revenue agent in the Civil Division of the Internal Revenue Service to the Intelligence Division of the Internal Revenue Service, and that at that time he was entitled to be informed of his constitutional rights.

In the instant case, no constitutional right is involved. No evidence has been obtained from the defendants in violation of their right to remain silent or to have the advice of counsel.

In *Mallory* the United States Supreme Court found that the defendant had not been given his rights under Rule 5(a) of the Federal Rules of Criminal Procedure.

The court, speaking through Justice Frankfurter, said:

"The case calls for the proper application of Rule 5(a) of the Federal Rules of Criminal Procedure, promulgated in 1946, 327 U.S. 821. That Rule provides:

'(a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.'

"This provision has both statutory and judicial antecedents for guidance in applying it. The requirement that arraignment be 'without unnecessary delay' is a compendious restatement, without substantive change, of several prior specific federal statutory provisions." Mallory v. United States, *supra*, 354 U.S. 449, 77 S. Ct. 1358.

The court found that under the circumstances of that case, where the defendant was arrested between 2:00 and 2:30 p. m., was thereafter interrogated, later submitted to a lie-detector examination, subsequently dictated a confession to a typist between 11:30 p. m. and 12:30 a. m., and was not brought before a commissioner for arraignment until the next morning, he was not arraigned "without unreasonable delay".

There is nothing in that case comparable to the instant case.

Without going into the facts in *Miranda*, we find it to be inapplicable to this case, it being a case based upon in-custody interrogation where the defendant had not been informed of his constitutional rights.

The defendants urge that a decision of the Supreme Court of Utah supports their view that the target of an investigation is an accused within the meaning of our grand jury statutes.

The pertinent part of that decision reads:

"An ordinary witness before a grand jury must give testimony except where it might incriminate him for some past misdeed, but he can't refuse to testify on the ground that if he commits perjury, he would be subjected to incrimination. All witnesses as such must give testimony regarding any matter òf which they have knowledge, which testimony is not privileged and is relevant to the matter under investigation by the grand jury, except where the testimony might tend to incriminate the witness for some past act.

"However, one being investigated for crime is not just a witness and cannot be treated as such. The target of an investigation is an accused within the meaning of the Constitution, and when he is detained in any significant way, he may not be interrogated unless he is advised of the charges against him then under consideration. To fail to so warn one so being investigated is to entrap him and to violate his constitutional privilege against self-incrimination." State v. Ruggeri, 19 Utah 2d 216, 429 P.2d 969, 973 (1967).

Without taking a position as to whether the quoted statement constitutes a correct statement of the law, we observe that the basic point made by the Utah court is that when one is detained in any significant way he may not be interrogated unless he is advised of the charges against him then under consideration.

In the instant case, the defendants were not detained or interrogated by the grand jury or anyone on its behalf. Accordingly, it is difficult for us to see how *Ruggeri* has any application to the instant case.

In *Ruggeri* the defendant was subpoenaed to appear before a grand jury and at the time of his appearance before the grand jury, he indicated he would like counsel. He was informed that the statutes of Utah forbid the presence of counsel in the grand jury room.

The Utah court said that unbeknown to him he was at that very time a target of the grand jury investigation which subsequently indicted him.

Under those circumstances the Supreme Court of Utah affirmed the trial court's suppression of the testimony given by the defendant at the grand jury.

Because of the difference in the circumstances in *Ruggeri* and the circumstances in the instant case, we find *Ruggeri* of no aid to us in determining the issues of this case.

The defendants also refer us to statutes and decisions in the states of New York and Georgia, which they believe support them in their position. We have studied those statutes and decisions and conclude that because of the difference in the statutes that the decisions have no relevance to this case.

Sections *29–09–11* and *29–10–45*, N.D. C.C., relate to the duration of a grand jury term. The pertinent parts of those sections read:

"29–09–11. * * * No grand jury shall remain in session for a longer period than ten days at any one term of the district court, except as the judge of the said court, by written order filed with the clerk of said court, may continue the session thereof to such further time and such further term as he may deem necessary. Otherwise a grand jury shall be discharged at the close of the tenth day of its session, but Sundays and legal holidays shall not be included in computing the said ten days' limitation."

"29–10–45. *Jurors to be discharged upon completion of business.*—Upon the completion of the business before them, or whenever the court shall be of opinion that the public interests will not be subserved by a further continuation of their sessions, the grand jurors must be discharged by the court, but whether the business is completed or not, they are discharged by the final adjournment of the court."

Section 29–09–09, N.D.C.C., sets forth the basic circumstances under which a grand jury may be called in our State:

"29–09–09. *When grand jury may be called.*—No grand jury shall be drawn or summoned to attend at any session of the district court within this state unless the judge thereof shall so direct by order in writing under his hand and filed with the clerk of the court in the county wherein the said grand jury is required to attend. The judge of any district court in and for any county must direct, in the manner herein provided, that a

grand jury be drawn and summoned to attend at a term of said court whenever:

"1. He shall deem the attendance of such grand jury necessary for the due enforcement of the laws of the state;

"2. The board of county commissioners of the county wherein the court is to be held, in writing, requests him so to do; or

"3. A petition in writing requesting the same is presented to said judge, signed by at least ten per cent of the total vote cast in said county for the office of governor of the state at the last general election preceding the calling of said grand jury."

Sections 29–10–11 and 29–10–12, N.D.C.C., provide for the calling of another grand jury or a special grand jury. The pertinent parts of those sections read:

"*29–10–11. Court may order another grand jury.*—The court may order another grand jury summoned, if:

"1. A grand jury is discharged by sustaining a challenge to the whole panel;

"2. An offense is committed during the sitting of the court, after the regular discharge of the grand jury;

"3. After such discharge, a new indictment becomes requisite by reason of an arrest of judgment or by the quashing of an indictment; or

"4. From any other good and sufficient cause another grand jury may become necessary, * * *"

"*29–10–12. Special grand jury.*—If a grand jury is formed and impaneled in a particular case, after challenges to individual grand jurors have been allowed, the jurors shall be sworn only to act in such particular case, and as to all other cases at the same term of the court the grand jury shall be formed in the usual manner provided by law."

Our Legislature has designated the areas in which a grand jury should function.

The general area is outlined in Section 29–10–18, N.D.C.C. It reads:

"*General duties of grand jurors.*— Grand jurors shall inquire into all public offenses committed or triable in the county, and shall present them to the court by presentment, or indictment, or accusation in writing."

The specific areas are set forth in Section 29–10–19, N.D.C.C. It reads:

"*Subjects of grand jury inquiry.*—A grand jury must inquire:

"1. Into the case of every person imprisoned in the jail of the county on a criminal charge and not indicted;

"2. Into the condition and management of the public prisons in the county; and

"3. Into the willful and corrupt misconduct in office of public officers of every description in the county."

In light of the impediments the Legislature has placed in the way of calling a grand jury; its obvious intention of keeping the grand jury's duration short; the early territorial legislation which gave the defendant no right to submit evidence before the grand jury; the practice in the federal system since the adoption of the Bill of Rights, which affords the defendant no right to submit evidence before the grand jury; and the obvious intention of the Legislature of retaining two methods of prosecution, one by indictment of a grand jury and the other by information, to make the grand jury workable, we conclude that the Legislature intended by the term *accused* in Section 29–10–25 to give a person imprisoned in a jail of a county who is charged with the commission of a crime and has not had a preliminary hearing the right to submit evidence on his behalf to the grand jury. The defendants in the instant case, not having been ar-

rested or committed to jail prior to their indictments, do not come within that section.

Accordingly, we hold that the district court was in error in quashing the indictments. Both cases are therefore remanded to the district court, where the defendants are entitled to a trial on the merits.

STRUTZ, C. J., and PAULSON, KNUDSON and TEIGEN, JJ., concur.